OPINION OF THE COURT
FISHER, Circuit Judge.
Reginald Sanders appeals from the final order of the United States District Court for the Eastern District of Pennsylvania denying his petition for a writ of habeas corpus. We will affirm.
I.
We write exclusively for the parties, who are familiar with the factual context and legal history of this case. Therefore, we will set forth only those facts necessary to our analysis.
A.
Late in the evening of August 15, 1996, Sanders, Lewis Briscoe, and Michael Williams were riding in a car driven by Royce Turnipseed in the Frankford neighborhood of Philadelphia. As the four men drove down the 5300 block of Oakland Street, they spotted John Cousins, an out-of-uniform police detective, walking down the street. Sanders, Briscoe, and Williams jumped out of the car and set upon Detective Cousins, intending to rob him, while Turnipseed stayed behind the wheel. During the ensuing confrontation Sanders shot Detective Cousins multiple times in the chest, after which the detective returned fire, striking Sanders in the thigh. As Detective Cousins lay dying on the ground, the men stole his gun and fled.
All four men were subsequently arrested and, following their respective arrests, Sanders and Turnipseed each gave a statement to the police concerning the shooting. Sanders admitted to the police that he shot Detective Cousins but claimed that he had done so in self-defense, firing only after the detective first shot at him. Sanders also admitted that he disposed of his gun after fleeing the scene. Turnipseed, for his part, told the police that he stopped his car on Oakland Street because “someone said ‘let me out,’ ” and insisted that he “stayed in the car” throughout the incident, driving away after one of the “other guy[s]” was shot in the leg.
Turnipseed’s girlfriend, Yaisha Ruffin, also gave a statement to the police, in which she recounted the details of a telephone conversation she had with Turnip-seed on the day after the shooting. Ruf-fin’s exchange with the police proceeded, in relevant part, as follows:
“Q. Did [Turnipseed] say if the guys in the car spotted someone walking when they told [him] to pull over?
*841 A. I recall that he said one of the guys said something like I see one, then they pulled over, the three got out.
Q. Did [Turnipseed] say if any of the three males had any type of face masks?
A. [Turnipseed] said that they, the three guys, had some kind of mask in their pockets. He didn’t tell me he saw them on their faces.
Q. Were these guys, the three of them, using [Turnipseed] as a driver so they could do highway robberies?
A. Yes. The way [Turnipseed] told me, it was like he had the transportation and these three having the masks, they used [Turnipseed]’s car. That’s how [Turnipseed] told me.
Q. Did [Turnipseed] say to you that when the males got back into his car after the gunshots that one or more of these males said they had shot someone?
A. Yes, he said one of these guys said he just shot somebody. Matter of fact, [Turnipseed] said that the one who said that he had just shot somebody said the person had shot him.
Q. Did [Turnipseed] say if any of the males who returned to his car on the corner said they had taken anything or robbed the person?
A. No.
Q. Did [Turnipseed] say how many people were in his car that were shot or hurt?
A. Actually, [Turnipseed] said one got shot in the leg, one got shot in the hand. He didn’t say about the third guy.”
B.
In late 1997, Sanders was tried jointly with Briscoe, Turnipseed, and Williams in the Court of Common Pleas of Philadelphia County. At trial, none of the defendants took the stand, although the post-arrest statements made by Sanders and Turnipseed were admitted into evidence. In addition, the Commonwealth called Ruffin as a witness to testify about her telephone conversation with Turnipseed. Ruffin testified that Turnipseed told her during the call that “he got into an altercation” somewhere in “northeast” Philadelphia and that “somebody had been shot,” but purported not to remember any other details of their conversation, leading the Commonwealth to attempt to refresh her recollection by showing her a signed, written copy of her statement to the police. After Ruffin responded that “a lot of [her statement to the police] is, you know, false,” the trial court admitted it into evidence “both as a prior inconsistent statement to impeach her [credibility]” and, because it was a statement against penal interest, “as substantive evidence of Tur-nipseed’s culpability only, pursuant to a cautionary instruction” about the right of confrontation under the United States Constitution.
The jury convicted Sanders of second-degree murder, robbery, criminal conspiracy, and possession of an instrument of crime, and the trial court sentenced him to life imprisonment for the murder count and an aggregate term of thirteen to twenty-six years for the remaining counts. Sanders then filed a direct appeal to the Pennsylvania Superior Court, arguing that his judgment of sentence should be reversed because, among other reasons, the admission at trial of Ruffin’s statement recounting Turnipseed’s remarks violated the rule of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), which provides that a defendant is deprived of his right to confront witnesses against him under the Confrontation Clause of the Sixth Amendment to the United States Constitution when a nontes-tifying co-defendant’s statement naming *842 him as a participant in the crime is introduced at their joint trial, even if the trial court instructs the jury to consider the statement only against the nontestifying co-defendant. The Superior Court rejected Sanders’s Bruton challenge and affirmed the judgment of sentence in an unpublished order dated May 26, 2000, and the Pennsylvania Supreme Court denied allocatur on June 26, 2001.
On May 28, 2002, Sanders filed a pro se petition for post-conviction relief under Pennsylvania’s Post Conviction Relief Act (PCRA), 42 Pa. Cons.Stat. Ann. §§ 9541-9546, and appointed counsel subsequently filed an amended petition. The PCRA court denied relief on July 9, 2003, the Superior Court affirmed by order without opinion dated April 12, 2004, and the Pennsylvania Supreme Court denied allocatur by order without opinion dated October 20, 2004.
On April 12, 2005, Sanders filed this petition for a writ of habeas corpus in the District Court, claiming, among other things, that the Superior Court’s decision affirming the trial court’s admission of Ruffin’s statement was “contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,” namely Bruton and Gray v. Maryland, 523 U.S. 185, 118 S.Ct. 1151, 140 L.Ed.2d 294 (1998), under 28 U.S.C. § 2254(d)(1). The District Court referred the case to a Magistrate Judge who, without holding a hearing, issued a Report and Recommendation in which she found that “[Sanders’s] claims were exhausted in state court” and recommended that the District Court deny the petition on the merits. In an order dated November 14, 2007, the District Court adopted the Magistrate Judge’s Report and Recommendation and dismissed Sanders’s habeas petition, but granted a certificate of appealability on the following question: “[Wjhether, in light of United States v. Richards, 241 F.3d 335 (3d Cir.2001) and Priester v. Vaughn, 382 F.3d 394 (3d Cir.2004), the admission of out-of-court statements made by a co-defendant violated the Confrontation Clause of the Sixth Amendment.”
This timely appeal followed.
II.
The District Court had jurisdiction under 28 U.S.C. § 2254 and we have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We review a district court’s order denying a state prisoner’s habeas corpus petition under a plenary standard where, as here, the district court based its decision exclusively on a review of the state court record, that is, where it did not hold an evidentiary hearing. Lambert v. Blackwell, 387 F.3d 210, 231 (3d Cir.2004); see Jacobs v. Horn, 395 F.3d 92, 99 (3d Cir. 2005). But “our standard of review is not simply plenary,” Vazquez v. Wilson, 550 F.3d 270, 276 (3d Cir.2008), and, under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), we may not grant a habeas petition arising from a state-court adjudication on the merits unless the relevant state-court decision “was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,” § 2254(d)(1), or “was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,” § 2254(d)(2). See Bond v. Beard, 539 F.3d 256, 263 (3d Cir.2008); see also Knowles v. Mirzayance, — U.S. -, -, 129 S.Ct. 1411, 1418, 173 L.Ed.2d 251 (2009); Taylor v. Horn, 504 F.3d 416, 428 (3d Cir.2007) (“We review de novo whether the District Court appropriately applied AEDPA’s standards of review.”).
*843 III.
On appeal, Sanders again maintains that the Superior Court’s decision affirming the trial court’s admission of Ruffin’s statement was contrary to, or involved an unreasonable application of, Bruton and Gray. We need not resolve this issue, however, because we conclude that any Bruton error was harmless in light of the overwhelming evidence of Sanders’s guilt.
On collateral review of a state-court criminal judgment, we do not defer under AEDPA to the state court’s harmless-error analysis but instead assess the prejudicial impact of constitutional error at trial under the standard set forth in Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), which provides that such an error is harmless unless it “had substantial and injurious effect or influence in determining the jury’s verdict.” Id. at 637, 113 S.Ct. 1710; see also Bond, 539 F.3d at 275-76 (citing Fry v. Pliler, 551 U.S. 112, 121-22, 127 S.Ct. 2321, 168 L.Ed.2d 16 (2007)). Under the Brecht standard, “habeas petitioners may obtain plenary review of them constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in actual prejudice.” Bond, 539 F.3d at 276 (quoting Brecht, 507 U.S. at 637, 113 S.Ct. 1710). ‘When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury’s verdict, that error is not harmless.” Id. (quoting O’Neal v. McAninch, 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995)).
Sanders argues that the admission of Ruffin’s statement caused him actual prejudice by “providing] the Commonwealth with its only real proof that the shooting occurred during the course of the robbery.” But Sanders’s argument is belied, first and foremost, by his own statements to the police that he shot Detective Cousins multiple times before fleeing the scene and disposing of his gun. In addition, there was testimony from the medical examiner that Sanders shot Detective Cousins at close range, not while running away from him, and from eyewitnesses that Sanders “tugg[ed]” at the detective’s belt and shirt pocket after the shooting. On this record, we are confident that the admission of Ruffin’s statement did not have a substantial and injurious effect or influence in determining the jury’s verdict.
IV.
For the foregoing reasons, we will affirm the Disti’ict Court’s order.